UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

RYAN STRATTON,                          )
                                        )
        Plaintiff                       )
                                        )
    v.                                  )   Case No. 18-CV-118-JED-JFJ
                                        )
SUTHERLAND GLOBAL SERVICES, INC.,       )
                                        )
        Defendant.                      )

**OPINION AND ORDER**

This employment discrimination lawsuit arises from the firing of Plaintiff Ryan Stratton by his former employer, Defendant Sutherland Global Services, Inc. Sutherland terminated Stratton after a medical condition prevented him from traveling on a business trip. In doing so, Stratton claims, Sutherland violated the Americans with Disabilities Act. Sutherland now moves for summary judgment. (Motion for Summary Judgment, Doc. 30; Memorandum in Support, Doc. 31). As explained further below, Sutherland is entitled to summary judgment because Stratton failed to timely exhaust his administrative remedies.

**I.     Background**

Defendant Sutherland Global Services, Inc., provides back-office support to corporate clients. In January 2016, Sutherland entered into an agreement with Motiva, an oil and gas concern, to take over Motiva's accounting operations. On February 22nd, Sutherland offered Plaintiff Ryan Stratton a job as the Senior Accountant working in the group established to handle Motiva's fixed-asset accounting. Stratton accepted the job and started on March 14th.

Sutherland's deal with Motiva involved transferring Motiva's accounting operations from Manila, Philippines, to Tulsa, Oklahoma. In order to facilitate the transition, Sutherland organized

a month-long trip to Manila for various senior employees involved in the project. Stratton was among those assigned to the delegation, which was scheduled to depart for the Philippines on April 8th.

Stratton's participation in the trip was derailed, however, when he was involved in a March 30 car accident. Stratton already suffered from hypertension and had previously undergone open heart surgery, and the trauma of the accident caused his blood pressure to spike. On April 7th, Stratton's cardiologist instructed him not to travel for two weeks. The next day, Sutherland's delegation left for Manilla without him. Ten days later, April 18, 2016, Stratton was fired.

Sutherland told Stratton that he was being fired because he was "unable tomeet the training standards required to perform his job duties." (Doc. 31-33).[1] According to Sutherland, Stratton's job was to train and supervise the team that would handle Motiva's fixed-asset accounting processes, and the purpose of sending him on the Manila trip was to acquire the knowledge and expertise necessary to do that. Because Stratton failed to acquire that knowledge, he was no longer qualified to do the job he had been hired for, according to Sutherland. Stratton claims that justification was a pretext, and that Sutherland fired him because of his health condition, a violation of the Americans with Disabilities Act.

The parties dispute when Stratton first filed a charge of discrimination with the Equal Opportunity Employment Commission, a necessary first step before a plaintiff can file suit. Stratton testified that his first contact with the agency was a phone call to the national office. (Doc. 31-1 at 190). He did not specify the date, but a summary of his case file shows an initial inquiry

---

[1] In an email sent to Sutherland managers, the human resources manager who delivered the news to Stratton said that Stratton was "informed that since he was unable to meet the training standards required to perform his job duties that we had to release him for failure to meet employment standards for his position. Ryan [Stratton] was hired with the clear understanding that all training was to be in Manila Philippines." (Doc. 31-33).

2

to the EEOC's national office on September 5, 2016, and a transfer of his case to another office the next day.[2] About a month later, on October 13, 2016, the EEOC interviewed Stratton and sent him an "intake questionnaire," a precursor to a formal charge of discrimination that, for the purposes of the agency's filing deadlines, can sometimes serve as the charge itself. (Doc. 31-38).

For the next six months, the EEOC case summary shows no activity. (*Id.*). Twice the agency's filing system entered an automatic closure of his case due to inactivity. (*Id.*). Then, on April 14, 2017, the agency received his signed completed questionnaire.

The parties agree that the April 2017 questionnaire is the only on record with the EEOC, but Stratton claims it to be the second questionnaire he submitted to the agency. (Doc. 31-1 at 190–92). "[W]e don't know what happened to [the first submission], so they sent me another one, and we filled it out and did it again."[3] (*Id.* at 192). Stratton's testimony has varied as to when he submitted the first questionnaire. In his deposition, he initially testified that he had "no recollection." (*Id.*). Later, he said he sent his first questionnaire "several months before" before his April 2017 submission. (*Id.*). Asked again for a precise date, he said "probably" early 2017 but maybe November 2016; "I can't specifically recall." (*Id*. at 193). Finally, in an affidavit filed with his response to the Sutherland's motion for summary judgment, Stratton revised his estimate, testifying that he submitted the questionnaire "[i]n the early Fall . . . . possibly as early as the first week of September 2016." (Doc. 36-1 at ¶ 19). Stratton contends that an entry in a hand-written EEOC "case log" provides support for an early Fall submission. The September 6th entry is labeled "Mail in–transfer" but provides no other information. (Doc. 31-39).

---

[2] The computer-generated document is styled a "Charge Detail Inquiry."
[3] According to the EEOC case summary, the agency only sent him a questionnaire once, on October 13, 2016. (Doc. 31-38).

In any case, the EEOC appears to have acted on only the questionnaire it received on April 14, 2017. On April 18, the agency assigned a staffer to the case and sent notice of his complaint to Sutherland. The agency also began drafting a formal charge of discrimination sent a copy to Stratton for approval on October 19, 2017. (*See* Doc. 31-20 at 3; Doc. 31-38). The agency received the signed charge, dated October 28, 2017, on November 2nd. (*See* Doc. 31-19; 31-38).

On December 4th, the EEOC dismissed Stratton's complaint and mailed Stratton a "right to sue" notice, a form-letter disposing of his EEOC case. Like all such letters, it included a section for the EEOC to indicate the reason it was closing its file. In Stratton's case, the EEOC checked the box indicating that the agency had investigated his claims but was "unable to conclude that the information obtained establishe[d] violations of the statutes." (Doc. 31-21). None of the other potential reasons for dismissal, including dismissal for failure to file the charge in time, were checked. (*Id.*).

## II. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The courts thus determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. The nonmovant's evidence is taken as true, and all justifiable and reasonable inferences are to be drawn in the nonmovant's favor. *Id.* at 255. The court may not weigh the evidence and may not credit the evidence of the party seeking

summary judgment, while ignoring evidence offered by the nonmovant. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam).

**III.    Discussion**

Stratton makes three claims for relief. In his first, he alleges that Sutherland failed to accommodate his disability as required by the ADA. In his second, he alleges that Sutherland wrongfully terminated him because of his disability. In his third, Stratton brings a state-law claim for wrongful termination under the Oklahoma Anti-Discrimination Act. Sutherland moves for summary judgment as to all claims, arguing, inter alia, that it is entitled to judgment as a matter of law because Stratton failed to timely exhaust his administrative remedies. The dispositive question is therefore whether a genuine dispute of material fact exists as to the timeliness of Stratton's pursuit of his administrative remedies.

   **A.    ADA Claims**

Before bringing an ADA suit, a complainant must timely exhaust his administrative remedies with the EEOC. 42 U.S.C. § 2000e-5(e)(1), (f)(1). The first step in that process is the filing of an EEOC complaint. In Oklahoma, a charge is timely when filed with EEOC within 300 days of the unlawful employment practice. *See* 42 U.S.C. § 2000e-5(e)(1); *EEOC v. W.H. Braum, Inc.*, 347 F.3d 1192, 1196 & n.2 (10th Cir. 2003).[4] An intake questionnaire may qualify as a charge

---

[4]    The ADA adopts Title VII's procedural scheme. 42 U.S.C. § 12117(a). For a charge of discrimination to be timely under that scheme, the complainant must file it with the EEOC within 180 days from the challenged employment action. § 2000e-5(e)(1). This period is extended to 300 days when the complainant has "initially instituted proceedings with a State or local agency" empowered to grant relief from the challenged conduct. *Id.* States with such agencies are called "deferral states." When the EEOC receives a complaint relating to conduct occurring in a deferral state, the EEOC automatically forwards the initial complaints to the relevant state agency, triggering the longer filing period. 29 C.F.R. § 1601.13. Because Oklahoma is a deferral state, *see* 29 C.F.R. § 1601.74, the operative filing period is always 300 days for conduct covered by the state's antidiscrimination statute, whether or not the complainant himself has initiated proceedings with the state.

for the purposes of the filing requirement if (1) its contents meet the EEOC's minimum requirements for a charge; (2) the circumstances of the case indicate that the complainant intended to activate the administrative process; and (3) the EEOC ultimately treated the questionnaire as a charge. *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1183 (2007). Failure to timely file a charge of discrimination with the EEOC does not raise a jurisdictional bar. *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185 (10th Cir. 2018). Rather, the EEOC filing period operates like a statute of limitations. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). Nevertheless, the obligation to demonstrate timeliness in filing a charge is a condition precedent to suit and thus a burden for plaintiffs to carry. *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1164–65 (2007). Failure to file a timely EEOC charge is fatal to a complaint unless the circumstances warrant equitable tolling. *Dumas v. Proctor & Gamble Mfg. Co.*, 453 F. App'x 819, 820 (10th Cir. 2011).

Here, the parties agree that Sutherland fired Stratton April 18, 2016, so the deadline for Stratton to file a charge or qualifying intake questionnaire with the EEOC was February 12, 2017. Stratton does not dispute that he filed the formal charge long after the deadline or that he submitted the only intake questionnaire in the record on April 14th, 2017, also after the deadline. Instead, Stratton argues that the April 2017 questionnaire should relate back to September 6, 2016, the date "on or about" which he claims to have submitted a previous intake form. (*See* Doc. 36 at 15). This argument is unsupported by the record evidence and foreclosed by Tenth Circuit precedent.

### 1. Lack of Record Evidence

There is nothing in the record that could serve as an anchor to which the April 2017 questionnaire might relate back. Stratton's affidavit testimony, in which he claims to have submitted his initial intake questionnaire "[i]n the early Fall of 2016 . . . . possibly as early as the first week of September 2016," is simply not enough to create a genuine issue of fact as to the

timeliness of his EEOC charge. (Doc. 36-1 at 4). "To defeat a motion for summary judgment, evidence, *including testimony*, must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (emphasis added).

Stratton argues his affidavit testimony does not stand alone. He asserts that the case log's "Mail in–transfer" entry "appears to corroborate" his claim because it bears the date September 6th, 2016. Taken alone, it might. In the context of the rest of the record, however, the entry fails to support even an inference that the EEOC received a questionnaire from him in September 2016.

First, construing the notation as evidence of a received questionnaire would be inconsistent with the manner in which the agency recorded other communications with Stratton. In the computer-generated case summary, entries denoting contact with either of the parties involved is given the description "contact/interview." (*See* Doc. 31-38). The September 6th entry, however, bears the label "Transfer Accepted." Similarly, every entry in the handwritten case log that records a communication, including the agency's receipt of his April 2017 questionnaire, includes a notion in the space for designating the "person contacted." (*See* Doc. 31-39). In Mail in-transfer entry, the "person contacted" box is blank.

Second, Stratton's preferred interpretation of the entry is, with the exception of his affidavit, contradicted by the bulk of his own testimony. In his deposition Stratton first said that he had "no recollection" of when he first mailed a questionnaire. Then, "probably" sometime in early 2017, "several months before" he sent in the April 2017 questionnaire. The earliest date offered in his deposition was November 2016. At no point did he mention the "early Fall," let alone the first week of September, which is in the summer.

Stratton also testified in his deposition that he called the EEOC periodically "for quite a few months" after his initial questionnaire submission. (*See* Doc. 31-1 at 193). Yet, the case

7

summary shows he only began making inquiries after he submitted a completed questionnaire in April 2017 form. (*See* Doc. 31-38; Doc. 31-39). None of the emails Stratton provided to the Court predate the April questionnaire, and the Court could find no reference to any prior questionnaire in the correspondence.

Third, the EEOC records are bereft of any evidence that the agency received a completed questionnaire in September 2016. The case summary shows that EEOC personnel interviewed Stratton on October 13, 2016 and sent him an intake questionnaire to fill out the same day. (*See* Doc. 31-38). If, as Stratton contends, the EEOC received a completed questionnaire in September, why would the agency have sent him another questionnaire a month later? Moreover, if the questionnaire sent by the agency in October was meant to replace the one it had lost, why did Stratton wait five months to complete it? And finally, the EEOC's case summary shows that, within days of receiving his April 2017 intake questionnaire, the agency assigned a staffer to investigate his claims and dispatched notice of the complaint to Sutherland. By contrast, in the days after the "Mail in–transfer" notation, the summary shows no activity at all.

In defense of his preferred interpretation, Stratton points to a December 4, 2017 letter from the EEOC, which transmitted a copy of his charge of discrimination to the EEOC's state counterpart, the Oklahoma Office of Civil Rights Enforcement.[5] Although the letter dates the EEOC's receipt of the enclosed charge to September 6th, 2016, the agency could not have received

---

5   Stratton did not include the letter with his response to Sutherland's motion for summary judgment. He submitted it in a motion to supplement the record filed three months after briefing on summary judgment had closed. (Doc. 41). Stratton's initial filing did not include a copy of the charge itself, which, according to the letter, the EEOC had originally enclosed. Following an order from the Court, (Doc. 43), Stratton submitted the full letter, including the attached charge, (*see* Doc. 45).

the charge on that date because the document was Stratton's charge of discrimination, which is dated October 28, 2017, and which the agency received on November 2, 2017. (Doc. 45).

Given the record as a whole, no reasonable trier of fact could conclude that the agency received a completed questionnaire from Stratton in September 2016. Although Stratton clearly had some contact with the agency around that time, the law requires more than merely opening a case file. In order to preserve his right to sue, a complainant must file a charge of discrimination within 300 days of the wrongful employment action. The record evidence overwhelming shows that Stratton failed to meet this requirement. The Court must view the evidence in the light most favorable to the nonmoving party, but the Court is not obliged to make inferences that are unreasonable or adopt a version of the facts unsupported by the record. *Harte v. Bd. of Comm'rs*, 864 F.3d 1154, 1173 (10th Cir. 2017).

### 2. Relation Back Is Impermissible

Second, even if Stratton did submit a questionnaire on September 6th, 2016, the Court cannot simply assume, sight unseen, that its contents would qualify as a charge for the purposes of exhaustion. *See Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1164–65 (2007). Stratton argues that, under *Jones*, it is enough that he intended the alleged September 2016 questionnaire to operate as a charge of discrimination, even if there is no evidence of that questionnaire or its contents in the record. This distorts the court's holding. In *Jones*, the court held that the questionnaire qualified as a charge of discrimination only after it had examined the questionnaire and determined (1) that it satisfied the EEOC's minimum requirements for a charge, (2) that it evinced Stratton's intent to begin the administrative process, and (3) that the EEOC treated the questionnaire as a charge.

Here, Stratton offers no evidence that the alleged September 2016 questionnaire met either of the first to *Jones* requirements. As for the third requirement, the evidence before the Court

shows that the EEOC did not treat the alleged September 2016 questionnaire as a charge of discrimination. EEOC rules require the agency, after receiving a charge of discrimination, to serve the respondent with notice of the charge within ten days. 29 C.F.R. § 1601.14. The agency did not send Sutherland notice of Stratton's charge until April 18, 2017. (Doc. 44 at 6). This strongly suggests that the April 2017 questionnaire—the only questionnaire in the record—was the only one that the EEOC treated as a charge.

Given that the Court has no timely questionnaire to examine, the Tenth Circuit's decision in *Montes v. Vail Clinic* is dispositive. In *Montes*, the plaintiffs filed their EEOC charges after the deadline but claimed to have submitted letters and intake forms to the EEOC's state counterpart in Colorado. 497 F.3d at 1164. Although there was no evidence of those contacts in the record, the plaintiffs argued that the alleged submissions satisfied their burden to submit a timely administrative charge of discrimination. The Tenth Circuit rejected the argument, reasoning that the sufficiency of a charge can only be assessed by reviewing the content of the documents submitted. *Id.* "[W]ithout [the letters] or the intake forms (all materials that are uniquely within plaintiffs' control), we are unable to do more than speculate whether they qualified as 'charges'. . . . And speculate we may not do." *Id.* Moreover, the court explicitly declined to apply the relation-back doctrine. "[T]he relation-back principle applies, and a prior defective charge may be subsequently amended, only when the earlier filing can itself be fairly construed to operate as a 'charge.'" *Id.* at 1167 (citing *Peterson v. City of Wichita*, 888 F.2d 1307, 1308–09 (10th Cir. 2001)). Here, Stratton asks the Court to engage in precisely the same kind of speculation the Tenth Circuit eschewed in *Montes*. The Court declines the invitation.

Finally, even if the Court were to assume that the EEOC lost what would otherwise have been a timely charge of discrimination, the circumstances do not warrant equitably tolling the

filing deadline. Equitable tolling of the EEOC filing deadline is appropriate only "if the circumstances rise to the level of active deception, such as when a plaintiff has been lulled into inaction by her past employer, state or federal agencies, or the courts." *Dumas v. Proctor & Gamble Mfg. Co.*, 453 F. App'x 819, 820 (2011) (internal quotation marks omitted). Here, nothing in the record suggests that the EEOC did anything that might have caused Stratton to sleep on his rights. If, as Stratton claims, the EEOC lost his September 6th questionnaire, the agency put him on notice of the need to resubmit on October 13th, when it sent him another form to complete. At that point, Stratton had four months before the submission deadline to fill out and return the questionnaire. Stratton argues that he is entitled to equitable tolling because Sutherland failed to post required EEOC notices in the workplace; however, he offers no evidence that Sutherland intended to deceive him or that he failed to timely pursue his rights because he was ignorant as to the procedures for doing so. On the contrary, given that Stratton contacted the EEOC in September 2016 and was sent a questionnaire to fill out the next month, he was clearly aware of the procedure for bringing a discrimination charge. He simply failed to do so in a timely fashion.

In short, there is no genuine dispute of any fact material to the question of whether Stratton timely exhausted his administrative remedies as required under the statute. *See* 42 U.S.C. § 2000e-5(e)(1), (f)(1). There is no evidence in the record supporting Stratton's claim to have filed an intake questionnaire "possibly as early as the first week of September 2016," and, even if there were, the law does not permit relation back of an untimely questionnaire to a timely questionnaire that no longer exists. Consequently, Sutherland is entitled to judgment as a matter of law regarding Stratton's ADA claims.

### B. State Law Claim

Like the ADA, Oklahoma's anti-discrimination statute requires a complainant to exhaust his administrative remedies before bringing a civil action. *See* Okla. Stat. tit. 25, § 1350B.[6] The state statute provides that a complainant will not have standing to sue in court unless he filed a charge of discrimination with the Attorney General's Office of Civil Rights Enforcement or the EEOC within 180 days of the discriminatory conduct. *Id.* Consequently, in order to preserve his state law claim, Stratton was required to file a charge of discrimination no later than October 15, 2016.

Stratton failed to meet this deadline. As explained above, the earliest date at which Stratton can be said to have filed a charge of discrimination is April 14, 2017. In his response, Stratton does not address the issue of timeliness with respect to his state law claim and offers no Oklahoma authority that might permit the Court to toll the filing deadline or relate his untimely filing back to a prior questionnaire submission. Because Stratton does not contest the fact that the only questionnaire in the record was filed long after Oklahoma's deadline, Sutherland is entitled to judgment as a matter of law on Stratton's state law claim.

### IV. Conclusion

Stratton failed to timely exhaust his administrative remedies as required by both the ADA and the Oklahoma Anti-Discrimination Act. Accordingly, Defendant's motion for summary judgment (Doc. 30) is hereby **granted.**

---

[6] Section 1350B provides as follows:

> In order to have standing in a court of law to allege discrimination arising from an employment-related matter . . . an aggrieved party must, within one hundred eighty (180) days from the last date of alleged discrimination, file a charge of discrimination in employment with the Attorney General's Office of Civil Rights Enforcement or the Equal Employment Opportunity Commission . . . .

SO ORDERED this 10th day of February, 2020.

JOHN E. DOWDELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT